AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
May 23 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 3:23-mj-70723 MAG |
| | ) | |
| Torres Jackson | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  March 26, 2023  in the county of  San Francisco  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| - 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) | - Prohibits any person from knowingly or intentionally possessing with intent to distribute a Schedule I or II controlled substance, such as fentanyl. |

This criminal complaint is based on these facts:

Please see the attached affidavit of DEA TFO Braden Lyons

☑ Continued on the attached sheet.

Approved as to form */s/ Michael G. Lagrama*
AUSA Michael G. Lagrama

/s/ Braden Lyons
*Complainant's signature*

DEA TFO Braden Lyons
*Printed name and title*

Sworn to before me by telephone.

Date: 05/22/2023

*Judge's signature*

City and state:  San Francisco, California

Hon. Laurel Beeler U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Braden Lyons, a Task Force Officer with the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

## INTRODUCTION

1. I make this Affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant charging JACKSON TORRES with one count of possession with intent to distribute fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and (b)(1)(C), on or about March 26, 2023, in the Northern District of California. Specifically, on March 26, TORRES possessed with intent to distribute about 176 gross grams of fentanyl around 7th and Stevenson Street near San Francisco's Tenderloin District.

## SOURCES OF INFORMATION

2. Because this Affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that the violation of federal law identified above has occurred.

3. I have based my statements in this Affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, and information that I have obtained from incident reports or law enforcement records and databases. I believe these sources are reliable. Where I refer to statements and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This Affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

## AFFIANT BACKGROUND

4. I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) – that is, an officer of the United States who is empowered by

law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code.

5. I am employed by the San Francisco Police Department as a Police Officer and have been so employed since October 2017. I am currently assigned to the San Francisco Police Department's Narcotics Division, and I am assigned to investigate narcotics trafficking offenses. I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) within the San Francisco Divisional Office in California. I have been assigned as a DEA TFO since April 2022.

6. I graduated from the San Francisco Police Department academy in June 2018. In the police academy, I received 40 hours of narcotics-related training. I also attended the San Francisco Police Department Detective School where I received additional narcotics investigations training. The training curriculum covered all aspects of drug investigations, including identification of the various types of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. The following is a list of courses I have successfully completed that are relevant to my job duties including narcotics-related arrests, investigations, and search warrants: Search Warrant Fundamentals (POST Certified-DOJ), Robert Presley Institute of Criminal Investigation (ICI) 80-hour Core Course, Cellphone Use in Narcotic Investigations (HIDTA), Gangs and Narcotics (HIDTA), Search Warrants and Narcotics Investigations (HIDTA), Northern California Law Enforcement Opioid Conference & Training 2021 (Rx Safe Marin), Confidential Informant Operations & Safety (HIDTA), Fentanyl and Other Synthetic Opiates (Midwest Counter-Drug Training Center), Drug Identification (Professional Law Enforcement Training – Texas), and the 57th Annual California Narcotics Officers Association Training Institute and LE Enforcement Summit.

7. During the course of my employment as a Police Officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who provided personal knowledge regarding drug

trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, and physical surveillance. I have also assisted in the execution of numerous federal and state search and arrest warrants regarding illegal narcotics activity, in which suspects were arrested and controlled substances were seized.

8. Through my training, education, experience, and my conversations with other law enforcement agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. By virtue of my training and experience, and through my conversations with other agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

9. I have participated in the investigation discussed in this Affidavit. I have also discussed the investigation with other DEA Special Agents and other law enforcement agencies involved in it. I have reviewed records and reports relating to the investigation. Unless otherwise noted, wherever in the Affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have reviewed and relied on in good faith.

## APPLICABLE LAW

10. Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) prohibits any person from knowingly or intentionally possessing with intent to distribute a Schedule I or II controlled

substance, such as fentanyl.

## FACTS ESTABLISHING PROBABLE CAUSE

11. As background, on November 18, 2020, in the U.S. District Court, Northern District of California, TORRES pleaded guilty to possession with intent to distribute and distribution of fentanyl.  (Case No. 3:20-cr-00114-CRB.)  TORRES was sentenced to 12 months and one day in prison and to three years on federal supervision.  On January 12, 2023, while on federal supervised release, TORRES was arrested for selling narcotics in San Francisco's United Nations Plaza, which is in the Tenderloin District.  In that January 12 incident, an individual working with TORRES possessed about 279 gross grams of fentanyl, among other narcotics.

12. On March 26, 2023, while still on federal supervised release for his 2020 conviction for possession with intent to distribute and distribution of fentanyl, TORRES was again arrested for drug dealing activity in San Francisco, California.  TORRES possessed about 176 gross grams of fentanyl, among other narcotics, a digital scale, and $328 in various denominations.

13. Specifically, on March 26, 2023, at approximately 3:27 p.m., San Francisco Police Officer A. Clifford (in coordination with other officers) was surveilling the drug dealing activity around 7th Street and Stevenson Street in San Francisco, California.   Within an approximate one block radius of 7th Street between Mission and Market Streets, which is near San Francisco's Tenderloin District, sits a federal office building, a federal courthouse, a preschool, a methadone clinic, and a health resource center serving the community. This area has suffered from an increase in criminal activity including drug trafficking, drug use, assault, robberies, stabbings, and shootings.

14. From a concealed location using binoculars, Officer Clifford observed a male adult, later identified as TORRES, standing on the westside of 7th Street, south of Stevenson Street. TORRES was wearing a black hat with an adidas logo, a black hoody with a teal-colored San Jose Sharks logo, blue jeans, and white tennis shoes.  TORRES also had a black backpack on.  TORRES was constantly looking around and surveying his surroundings.  This behavior,

based on Officer Clifford's training and experience, is common among narcotics dealers who are on the lookout for rival drug dealers, possible customers, and police.

15. Officer Clifford observed TORRES make up to three drug sales. First, TORRES engaged in a conversation with a black male adult, who gave money to TORRES. In turn, TORRES handed the black male a small white substance. Second, a white male adult walked up and talked to TORRES. The two men turned their bodies and appeared to be handing items to each other. Based on his training and experience, Officer Clifford believed TORRES had completed one drug deal with the first male and possibly another drug deal with the second male. Believing there was probable cause to arrest TORRES for drug dealing, Officer Clifford provided the arrest team with a description and location of TORRES and advised the team to move in and arrest TORRES.

16. In the meantime, Officer Clifford observed another drug sale, as TORRES walked to the southwest corner of 7th and Market Street and continued to walk southbound on 7th Street. Another white male adult approached TORRES and the two engaged in a conversation. TORRES turned his backpack around, went into his backpack, and retrieved a small white substance, handing it to the white male.

17. Officer Clifford then saw members of the uniformed arrest team respond on foot, southbound on 7th Street. TORRES looked at the approaching police officers, one of whom identified himself (in Spanish) as police and told TORRES to stop and not move. But TORRES started running and tossed three plastic baggies on the street. Officer Murphy, who was part of the arrest team, picked up the three plastic baggies as other officers chased after TORRES. As he ran, TORRES tripped and fell on a sidewalk, and officers arrested TORRES and seized his backpack. TORRES told the arresting officers (in Spanish) that "you can grab me a million times and we will quickly get out" and he did not "give a f***."

18. After Officer Clifford arrived on the scene, he conducted an arrest search of TORRES, finding two clear plastic baggies of white chalk-like substance and numerous denominations of cash inside TORRES' pockets. Officer Murphy handed Officer Clifford the

three plastic baggies that TORRES tossed on the street. Officer Clifford also took possession of TORRES' black backpack. Inside, Officer Clifford found a satchel containing plastic baggies with white chalk-like substances. Officer Clifford stopped the search and took all the items to the Tenderloin Police Station for further examination.

19. At the police station, Officer Clifford again searched TORRES' backpack that contained the satchel. Inside the satchel Officer Clifford found four clear plastic baggies containing chalk-like substances in different colors—two of the baggies contained a white substance, one baggie contained a green substance, and one baggie contained a purple substance. Inside the backpack, Officer Clifford also found a digital scale, more cash in various denominations, and empty clear plastic baggies.

20. Officer Clifford used a TruNarc device to test the suspected narcotics. The chalk-like substances tested presumptive positive for fentanyl and, in total, weighed about 176 gross grams. As to the three plastic baggies that TORRES tossed on the street, the substance in one baggie tested presumptive positive for methamphetamine and weighed 5.8 gross grams. The substance in the second baggie tested presumptive positive for cocaine base and weighed about 1.9 gross grams. Officer Clifford did not test the substance in the third baggie, which he determined was heroin (based on his training and experience) and weighed 3.5 gross grams. Finally, officers seized a total $328 cash in various denominations from TORRES' person and inside his backpack.

21. Based on the evidence seized from TORRES on March 26, there is a probable cause that TORRES possessed with intent distribute the approximately 176 gross grams of fentanyl that was on his person and inside his backpack.

/ / /

/ / /

/ / /

## **CONCLUSION**

22. Based on my training and experience, my participation in this investigation and the information summarized above, there is probable cause to support the following Count:

**Count One**: On or about March 26, 2023, Jackson TORRES possessed with intent to distribute fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and (b)(1)(C).

  /s/ Braden Lyons
Braden Lyons
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this ___22nd___ day of May 2023. This application and warrant are to be filed under seal.

_____
HONORABLE LAUREL BEELER
United States Magistrate Judge